Before I begin, I guess I'd like to comment that it puts counsel to severe disadvantage when you take the opening joke and use it. I was going to thank you for scheduling us down here in Pennsylvania as opposed to Seattle. But putting that aside, my name is David McDonald. I represent the Washington State Democratic Central Committee. I will be arguing today on behalf of both the Democratic Party, the Republican Party, and the Libertarian Party. That's a headline grabber right there. I mean, it's cooperation. There are some problems that the three parties can solve together that seem not to work in Washington, D.C. But do that as you can. Before I begin, I do need to make one apology to the Court. In our opening brief, the Democratic brief at page 11, we apparently had a miscitation to the record. I did not put it. It was a typo. The State caught it at note 6 of their response. And we had originally in our reply a correction, which we somehow edited out in the haste of getting it in. And the correct citation for that material at page 11 of our brief should be evidence record 268 through 270. To and in particular at evidence record 270, which is a request for proposal issued by the Washington Secretary of State shortly after the Supreme Court decision in this case, seeking proposals for an educational program. And in the proposal at 270, he described the top two as allowing candidates to file for partisan office and list on the ballot a party affiliation. And then at page 272, as part of the winning proposal, the proposal identified key messages that would be put into the advertising. And you will see that the key messages for the primary at item C on 272 included candidates decide their party affiliation, not political parties. And key messages that would be conveyed for the general election included the candidate can designate party affiliation. And at C in the primary, the top two vote getters advanced to the general, regardless of party affiliation. This is in what context? This was in the context of the second set of quotations I read is a quote from the winning proposal for the advertising campaign that the State was going to put on after the Supreme Court decision in this case. This was the proposal. It was not disseminated generally. It was to the advertising agencies. No, that is the response from the advertising agency as to what they proposed to do, which the State apparently accepted. The first quote that I read was the Secretary of State's description of the primary. The second quote was the key messages that the advertising agency proposed to. Were these finalized, or these were just part of the solicitation of bids? What I was about to say, actually, is the State points out that the record does not necessarily indicate that this was distributed publicly. But what it does, what these things do indicate is the way election officials and people close to this primary understood the party preference declaration. The Secretary of State understood it to be a declaration of party affiliation that would be listed on the ballot. The advertising agencies understood it to be a declaration of party affiliation. And I think the ---- Counsel, that's directly contrary to what the printed materials on the ballot say. Before we go down, you know, arguing over the evidence, can we step back a minute? Because I want to understand how the parties view what our position is vis-a-vis the district court. As I understand it from footnote four of his order, he treated this on cross motions almost as if it were a bench trial. There's no jury trial been asked for. So basically what Judge Kunauer was doing was, first of all, pursuant to our remand, which we opened up, pursuant to the Supreme Court, which didn't like what we did the first time around, opened it up for the as-applied evidence and also on the trademark issues to the extent that they survived or were viable. So there was an aspect, in fact, the focus, as I would have understood it, was there were definitely legal questions applying the Supreme Court's opinion, but there were also factual issues. And the record shows that you presented an expert or tried to maybe put on two, and the state had one. Judge Kunauer, in his opinion, I can't tell if he's ruling on it in a traditional summary judgment mode or he's essentially converted into a quasi-bench trial because he's looking at the evidence, he's reviewing it, he makes statements about the credibility of your expert and so on, and he at one point seems to rule out the evidence as not necessary. On the other hand, he then goes on to say that, and I'm paraphrasing, even if that evidence is considered, it's insufficient as a matter of law. So I'm trying, I just want to, in your discussion, and you've triggered it by reviewing the evidence, I don't know what we're supposed to do with that, whether we treat it as a normal summary judgment issue. We'd be saying, did you put on enough to create a triable issue? Well, the judge is the trier of fact in this case, and he's made a determination, so I don't know what we would gain if we sent it back for more evidence. We're not asking you to send it back. I didn't think you were. No, we're asking you to grant our summary judgment because the evidence we put in was not rebutted and the evidence we put in is sufficient to determine the case. And what I wanted to say with respect to the dissemination of this is it wasn't accidental. The Secretary of State had that view of what the term party preference meant because when you look at the evidence that is both before this court and in the record, that's what the public understood it to mean. Initiative 872, when you look at its legislative history. Excuse me, counsel. Before you go on, I just want to follow up on one thing that Judge Fischer mentioned. For our purposes, even though the district court characterizes this as a granting of summary judgments on each part, I'm understanding you to say, in effect, that for your purposes and perhaps for the state's as well, you want us to treat this as basically the result of a bench trial. We're not talking about sending anything back for new fact finding. You're saying at this point the facts are what the court found them to be unless we find it to be clearly erroneous, in effect, and this is strictly a matter of law. Is that correct? No. That's not what I'm saying. What I'm saying is that the state was faced with a motion for summary judgment supported by evidence. Right. And it failed to dispute or provide evidence disputing the material facts. And as a result, we're entitled to summary judgment. Okay. So you're saying that even though it's a summary judgment, the facts are not disputed because the state didn't dispute them. Right. Okay. And so you're saying that even if we were to conclude that we agreed, just hypothesizing, if we were to conclude that Judge Kunar was right in his critique of your expert and the small sample and the fact it was out of context and so on and so forth, nonetheless the state didn't put anything on, although I thought they did. They put someone on who challenged his methodology. But that that would be the evidence that the Supreme Court said it would require to sustain an as-applied challenge? What the state did not put on evidence of is what its notice meant, whether voters read it, whether it had any impact on their perceptions, And therefore, they failed to prove that the risk that is inherent in this situation was eliminated. Even if the experts are not considered, there is sufficient evidence in the record that they needed to rebut as to what the understanding of the public is with respect to the term party preference and prefers party on the ballot, that we were entitled to a summary judgment at that point. Well, didn't the state do everything that the Supreme Court said it should do to make the ballot valid? The fact that the Secretary of State may have inferred, they were talking about the well-informed electorate. And here they advertised, they had educational programs, they did not use the ballot that Man Weller used, and they did not use the ballot that the Supreme Court used, and they did not use the ballot that the Supreme Court used, and they did not use the ballot that the Supreme Court used. And so you have a lot of things to say that the state did not read versus please read and, you know, there are lots of differences there. Why isn't that sufficient? Because the district court's decision embedded an assumption that the Supreme Court could make on a facial challenge because it did not have the record, but that the district court was not entitled to make. Namely, what does the term party preference mean when it is read in that disclaimer in the State of Washington? When it is read by a well-informed voter who is aware of the legislative history of 872, that it is passed directly in response to a decision of this Court, which talked about party preference as if it were party affiliation, that it is passed in order to put a party preference in the place where one of its parties is indicated by state statute, that it is passed at a time at which ballots that are shown in the Republican Party's reply brief, at a time when ballots that are given to voters in the State of Washington say, you must choose to affiliate with a party by indicating your party preference. And I understand that you're relying upon these two studies that were offered to show actual confusion to buttress your position. Do I understand correctly, though, that neither of those studies showed that the participants in the study were not shown either the voters' pamphlets or the ballot inserts when they were asked to respond? Is that correct? That is correct. But I don't think we need to get to those in order for the case to be decided. And ---- Well, wait a minute, because I thought you were relying to some degree on that to show that there was confusion. What else do you rely upon other than those two studies to show confusion? If I can finish the chronology of history. Please. I'm sorry. Go ahead. I apologize. But the public has those ballots. It has ---- it's passing an initiative, the purpose of which is to respond to the State to the Ninth Circuit opinion in the blanket primary case. Right. And the terms of the initiative need to be understood in the terms in which they were responding. And this Court had said at that time that in the blanket primary decision that the voters do not reveal their party preferences at a government registration desk does not mean they do not have them. The Washington scheme denies party adherents the opportunity to nominate their party's voters whose preference is for the other party. This case starts off with an initiative that is dealing with party affiliation and party registration as synonymous. The State statutes treat it as synonymous. The ballots that are being used at the time that voters vote on this treat party affiliation and party preference as synonymous. When the State goes to implement it, the State treats party preference and party affiliation as synonymous. How did they do that, counsel? I'm looking at the disclaimer. Maybe I assume this is the disclaimer of record. It said a candidate's preference does not imply that the candidate is nominated or endorsed by the party or that the party approves of or associates with that candidate, and that that is reinforced by the ballot insert, the voter pamphlet, and advertising. Now, you started off this whole discussion by talking about an ad campaign that went nowhere. So the record we have and the record that the Supreme Court was looking at was, and as Judge Nelson indicated, they said we're not going to strike this down facially if there's a record of actual voter confusion by the well-informed voter with all of the context and I have to say, counsel, I'm underwhelmed by the evidence of actual well-informed voter confusion in light of the State having adopted all of the things, except that it did add in this prefers Republican, prefers Democrat, whatever. But what I hear you now saying is the term preference in the voter's mind is an embedded concept that preference equals affiliation equals contrary to what the ballot says. That's enough and we've got to go on that. And I don't know where, just let me finish, I don't know where the evidence is about what you're saying about historically, you know, preference means all these things and that the current Washington voting public has not somehow picked up the distinction when it's on the ballot and says it. The evidence of the equation of party preference and party affiliation is in the statutes that were adopted before and after implementation of 872 in the administrative regulations that include party affiliation and party preference. Counsel, forgive me, you're losing me here because the Supreme Court has spoken on this issue. This is our second time, you know, it's come back now. Whatever the Ninth Circuit said before, whatever the statute said before, it's come back now to the State of Washington and you had your proceedings before the district judge. You presented some evidence that you believe buttressed your position, and among those are these studies. We can draw our own conclusions about whether failure to put in the references about the voter pamphlets and the ballot inserts is important, but what I'd like to know is aside from the statutes, which I don't think most members of the public have the faintest idea what that is, some judges don't, but what specifically do you rely upon as the evidence from the political parties that shows that there is voter confusion based upon the current information that was set before the voters? Every piece of evidence that was put in showing the way people talk about candidates after they indicate their party preference. And where would I find that? The various newspaper articles that are cited in the evidentiary record. Okay. Newspaper articles. Okay. The way that elected officials talk about the candidates indicates that the total absence of anybody saying these are personal preferences. I mean, to the extent that we assume. Excuse me, counsel. You said the absence of any of the widespread educational programs by the state indicating exactly what you said. Nobody said anything about that. If you assume that party preference means something other than party affiliation, I would agree with you, but there's nothing in this record that supports that assumption with respect to the State of Washington given the way its statutes read, which I submit if we're talking about a reasonable, well-informed voter, I think we're entitled to assume that they're informed about the statutes to the same extent that the other side is entitled to assume that they've read the voters' pamphlets. Whose burden is it to show that here? The State's or yours? The meaning of party preference, the meaning of their discipline. Yeah.  I think it's the State's burden. The State had the burden to show that it eliminated the risk of voter confusion, which the Ninth Circuit had identified if it was going to use a ballot exactly the same as the one it used. The example you used in your prior opinion specifically prefers the Republican Party after the candidate's name. So they, the Supreme Court and the State, looked at that. They have to realize that there's a risk. Their job is to eliminate the risk. And in order to do that, at a minimum, they should be required to show their disclaimer worked. I mean, there's simply no evidence. I think the CPSs wouldn't endorse the clarity and bindingness of what our prior opinion said. As I recall, he said, and maybe I'm quoting from the majority opinion, but I think it was Justice Roberts who said, it's like saying somebody prefers Campbell's soup. And that's all preference means. It's the candidate's preference, and that's all the ballot communicates on its face. And so coming back to Judge Smith's question on that, you're saying that the burden shifts to the State because somehow our prior opinion created a prima facie case on your part of voter confusion and they have to rebut it? The burden shifts to the State because the circumstances in which this initiative was elected, the collateral statutes tell the voter that that preference statement is going to be a statement of affiliation. And if you look at the disclaimer, for example, what it doesn't say is it doesn't say that the candidate's not affiliated. What it says is, hey, this candidate may be like everybody's uncle that they don't want to roll out on Thanksgiving. But doesn't the ballot say, excuse me, counsel, the ballot does say that preference does not indicate that the party has endorsed the candidate. Yes, but it doesn't say that he's not a member of the party. It doesn't say he's not affiliated. As I said, there are members of my family that I don't endorse, approve of or nominate, would not support for public office, and I just assume not associated with. You want to indicate who they are? Not in the tape that's available. And I have that and I have that. You'd be kind of interested in that. I have that right to do that. Excuse me. I have no right to change who my relatives are. But a party has the right to not be affiliated with somebody. Well, that's true, but that's begging the question, because what they're saying is what the Supreme Court seemed to uphold was the notion that a candidate could state his or her preference whether or not the party accepted it. And I think I don't know if we used that example in the prior opinion or not, but the David Dukes example where the Republican Party, as I recall, did not want to have his preference in any way associated with that party, and therefore they engaged in a fairly heavy campaign or publicity effort to dissociate themselves. But that seems to me the quandary we're in is that we can sit around in this room and talk in generalities, but I think there's very, very limited evidence given, as Judge Nelson said, I think is obvious, I think you appreciate it. The Supreme Court was quite specific and said a lot of things, be it dictum or holding, which indicated that based on what they saw before them, they thought that there was not a substantial burden, and therefore it passed muster. And I take your argument, but I think we're all struggling trying to figure out what is it that we're supposed to be looking at now to say what the Supreme Court found and said worked okay on its face is fatally flawed in practice, and I'm having trouble getting traction on the proof on that. At a very high level, there is a statute, which the voter has to be assumed to understand, which says that the candidate's party is being indicated after the candidate's name. The fact that it's a partisan race means that the public generally assumes, and the State's expert concurred with that definition, that party representatives are being run, being run on it. Elsewhere on the ballot, there is a disclaimer, which at best says, well, it doesn't mean that they're affiliated. But it does say that. But that would mean that you've got confusion for the voter off the top. You've got a statement that they're told by statute does mean affiliation. You have a statement that says it doesn't imply it. The confusion is inherent in the situation in the history, and that's why it becomes important to know whether the State's disclaimer had any impact or whether it left things confused, a confusion that is inherent from the situation. The fact that instead of implementing this with some terms that were different or instead of putting the candidate's preference on the ballot, in addition to the indication of the candidate's party that the statute required, they used it in place of the indication that the statute required. Kennedy. So you want us to assume that the well-informed voter not only has ‑‑ is aware of the disclaimer, but is aware and understands the ‑‑ well, aware of and understands the Washington State statutes. Is that correct? Yes. And I think the ‑‑ the one thing that everybody seems to agree on is that basically the public starts confused. And once we start deciding what well-informed voters know, I think we've got to assume that they are familiar with the voting materials and the statutes that apply. So from your perspective, if confusion is a presumption, there's no way to overcome that, in effect. No, there would be a way to overcome it. And how would that be? The State could have tested the effect of their disclaimer. They could have said, we have a disclaimer. We can do a scientific study of the kind that Dr. Donovan talks about. We can give it to voters in controlled conditions. We can say, okay, after you read the ballot and read the disclaimer, let us ask you a few questions about what you thought at the time you were voting. They could have gotten results that would have been evidence. We brought in credible evidence that because of the context, because of the history, because of discretionary actions they had taken, that there was a high risk of confusion and evidence that it wouldn't take much confusion to change the outcome of elections in the State of Washington. And they responded with nothing but, well, here's the disclaimer. We don't even know if it's read. We don't even know if people understand it. And if they understand it, we don't know what they understand it to mean, whether they understand it to mean that a party preference statement, which is a statement of party affiliation to most voters, isn't really a statement of party affiliation, even though the statute says it. Let me ask you this. If, hypothetically, if I were to say, okay, the study that you put on is defective because it didn't show the actual conditions here, you didn't put on any evidence, they didn't put on any evidence, then what happens? Is this your burden of proof issue again, that it's the State's obligation to show that there's no confusion? The State, yes, I think it probably is. The Supreme Court said that the State could implement it constitutionally if it eliminated the risk of widespread voter confusion. And we do not know whether they have eliminated the risk. The newspaper reports all the anecdotal information. Every piece of evidence suggests that people still treat party preference and party affiliation as the same thing and would be confused on the ballot and there was no contradictory evidence. I'd like to reserve my four minutes for rebuttal. On the attorney fees? I think that depends on the outcome of the overall case. Well, no, it doesn't. I'm talking about the pass fees. Oh, the settlement discussion? Yeah. I don't have any additional argument beyond what's on the papers. Is it correct that looking at the language of the stipulation, if we assume it's unclear, you wrote an email, I think you were the author of one, and your counterpart for the Republican Party wrote an email stating your respective expectations, which were identical. The State didn't respond to it. When the Supreme Court ruled and reversed us, my understanding is that the Democratic Party gave the fees back to the State. Is that correct? We did. We reserved our rights to pursue them further, but we paid it. So if we're looking at extrinsic evidence, do we weigh the Democratic Party response in the balance of what the party's understandings were? I do not understand. The fact that we paid rather than have a judgment entered against us after the court's decision should not be taken as meaning we indicated in the court's decision. All right. Thank you. Excuse me. I have the same issue this morning with allergies. May it please the Court. My name is Jeffrey Even. I'm here on behalf of the State of Washington defendants. With me at counsel table are James Ferris, who's also a deputy solicitor general with our office, and Tom Ahern, counsel for the Grange. Mr. Ahern will also argue this morning. All right. In light of the discussion that's already occurred, I'd like to begin by focusing for a moment on the words of the U.S. Supreme Court in their decision in this case as to what confusion they were concerned about in an as-applied challenge. The way the court described this is that the question was whether a well-informed electorate will interpret a candidate's party preference designation to mean that the candidate is the party's chosen nominee or representative or that the party associates with or approves of that candidate. And then later explained that it was confident that there are, and quoting now, there are a variety of ways in which the state could implement Initiative 872 that would eliminate any real threat of voter confusion. Now, I think it's important in thinking about that language to think about, well, what does that mean? What's the standard that a court would apply on remand? And in particular, much of the argument that we've heard already today, I think, raises a danger of imposing a subjective standard, which I think Judge Kunawer dealt with rather well in his opinion, that there's a danger that if we start to inquire into subjective thoughts of the voters as they're looking at the ballot and related materials, that we could wind up with essentially a never-ending dispute. Counsel, can I pursue a similar line of reasoning, a question that I did with your opposing counsel? You have very properly indicated the U.S. Supreme Court has given us guidance on this issue generally. But nonetheless, you've got two dueling motions for summary judgment. Certain evidence was presented to the district judge. The district judge made decisions accordingly. Your opposing counsel says that the burden of upholding the statute here rests on the state. Do you agree with that? No, I don't, Your Honor. Then why is that? We're talking about the constitutionality here of the state statute. And so just as a general matter, a statute is presumed to be constitutional until evidence demonstrates otherwise. And in this case, what the Supreme Court indicated was that there were a number of ways in which the state could implement the initiative without implicating the constitutional concerns that at least hypothetically might have been there. Now, given that that was a facial challenge, the Supreme Court couldn't simply end the matter right there because there wasn't evidence of how we'd actually implemented it. We hadn't done it. Had we gone out and done something radically different than what the Supreme Court had indicated, then I think we'd have a question about whether that something was sufficient or not. But we took our cues from the Supreme Court decisions. What did the Supreme Court say about the preference, then? Well, about what the preference, the issue I think the Court was concerned about as a hypothetical matter was whether the voters would understand that statement of preference to actually mean that the candidate was nominated, endorsed, a member of the political party. Or approved of. Or approved of. What it really says is I prefer it. I approve of that party. The Chief Justice used the Campbell Soup analogy. So why is it in the record why Washington opted to put that designation on the ballot to allow candidates to do that? To have the indication there at all. Yes. The purpose was to provide some indication to the voters about something. Okay. And what does it say? It says prefers the Democratic Party or prefers the Republican Party. And presumably the state understood that that conveyed some information about the candidate. And for me to walk around identifying myself as a Republican or a Democrat, you would assume from that that I have some connection to that party. And it could be my own personal connection or it could be something more formal. And it could or couldn't be reciprocated. That's correct. But there is something inherent in the, just because of history, inherent that identifies the character of the candidate when the candidate elects to identify him or herself with a party as opposed to say I'm a social conservative, fiscal conservative, whatever. So the candidate is given on the ballot the opportunity to identify him or herself with whatever brand identity there is with the parties. To say that the candidate prefers that particular party as opposed to some other. Now, the Supreme Court also addressed another concept that I think relates to that question, which is that they rejected the idea that a First Amendment issue could arise by virtue of simply creating the impression of an association. The court in, I believe it's footnote 10 of the Supreme Court opinion, of the majority opinion, indicates that no, what we'd really have to be talking about here would be an actual association, not simply a vague impression that's created. Because what the ballot does is states the candidate's preference as such and also explains what that means. The language that's already been quoted today of stating on every ballot a candidate's preference does not imply that the candidate is nominated or endorsed, etc. Now, Mr. McDonald says yes, but it doesn't say that they aren't. Well, the problem is, the problem with Mr. McDonald's point about that is that this reminder that's on the ballot has to speak universally. It applies to all partisan races on the ballot. Some of the candidates who are on the ballot saying they prefer a particular party really are nominated or endorsed by that party. So the state can't take it upon itself to try and foresee that. We have one notice here just letting voters know that that statement of preference is a statement by the candidate as to what the candidate does or does not prefer, or does prefer, rather. Now, that's, then when we look at the other steps that the Supreme Court indicated the state could take, well, the first thing... Why wouldn't it be permissible if the person is a nominated candidate just to simply say Republican or Democrat? And then the other's preferences would be clear that they aren't official, but they prefer. The Supreme Court also addressed that point. It's footnote 7 of the Supreme Court opinion, which indicated that the political parties do not have the right to have their nominees listed as such on the ballot. Now, I think had the state... No, they may not have the right. I wasn't asking about it as a right. Why didn't Washington elect to do it that way to add to the clarity and avoid confusion? Well, frankly, because the initiative isn't written that way. I wouldn't suggest that the state could not do that, that it would be prohibited. But I think the Supreme Court has already indicated that the state didn't have to. I want to get back. Because the Supreme Court gave us a standard in the facial challenge, now we're talking about an as-applied challenge, we need to get back to evidence. You indicated you felt that it was not the state's burden because statutes are presumed to be constitutional, unless they're shown to be otherwise by some strong evidence. Now, your opposing counsel indicated that there's evidence introduced about what politicians say about one another, their parties, that there's anecdotal evidence in the newspapers about what people think about somebody. They have these two studies that came in. In each of those, the proponents of this lawsuit contend that great confusion results, that notwithstanding the boilerplate disclaimer that it's just confusing, that doesn't meet the Supreme Court standard. Let's take each one of those evidentiary components. Again, at this point, as I understand it, that's what we're really looking at. What about the evidence that shows up in, say, newspapers about what people, the candidates say about each other and the general confusion that could create? Does that meet the standard to overcome the constitutionality here? No, Your Honor, it doesn't. The newspaper references that the parties put into the record are simply examples of newspaper articles in which somebody is referred to as a Democrat or a Republican. I guess the first point to make is that the way the constitutionality of the statute can't really depend upon how a newspaper reporter or editor chooses to phrase a concept. They are under no duty to be precise in the language. So the newspapers are kind of irrelevant here because what you're really talking about under the Supreme Court rule is what the ballot says, what the information given by the state to the voters says. Is that correct? I think that's correct. But even beyond that, what the political parties would need to show here, and I still think this would be insufficient even if they did show this, but what they would need to show in order to make a point with those newspaper articles is that the newspaper is actually directly telling the voters something that's contradictory to what the state's saying. Instead, what we're really seeing in those articles are shorthands. Somebody refers to a candidate as a Democrat or a Republican or uses that word in a story about the candidate. Well, the backgrounds of many politicians are well known. It's a little difficult to believe that some of these statements aren't actually factually true, that somebody has a lifelong history of affiliation with a party. And that raises the question. Excuse me. Was that evidence? Are you talking about evidence that was in the record that supports your point? Well, I'm making an observation about why a story in a newspaper would refer to somebody in that way. It simply doesn't stand for the proposition that the political parties offer it. Well, that gets back to the point that I asked you about before. Mr. McDonald indicates that if there's confusion out there in the electorate generally because of the way people refer to each other, so-and-so is a Democrat, so-and-so is a Republican, and so on, that that is sufficient to create the kind of confusion that raises First Amendment issues. My question to you was, under these circumstances, since we're talking about this initiative, this ballot measure, isn't the standard really what does the ballot say? What does the information given to the voters say? These are things over which the state has control. Is that what the Supreme Court was talking about, or is the Supreme Court talking about the universe of political conversation that occurs outside the ballot and the information given directly by the state? I think they're talking about the former because the Supreme Court decision doesn't go into the latter. What the court does tell us is... The former being the general or the ballot? No, the former being the ballot and related materials because, as the court put it, there are a variety of ways in which the state could implement I-872 that would, and I think that's an important word, that would... The reason I ask that is because looking at the Chief Justice's concurrence here, he repeatedly refers to how the state would design the ballot, assuming the ballot is so designed, on the other hand, that the ballot merely lists the candidate. It all seems to be focused on the ballot and information related to the ballot. I think that's right. Suppose, I just want to see where this is going. All right, the ballot says what it says, and they come in and the press is replete with information that the voters really don't understand what preference means. They think that they are the nominee. It gets as strong as that. The State Attorney General, the Secretary of State come out in public statements and blur the distinction treating a candidate as a Republican or a Democrat so that there is evidence. He said something about, well, we don't get into subjective evidence, but voter confusion is how the words or the images or whatever translate into public's perception. That's borrowed from trade name infringement cases, and there's a trade name issue or trademark issue in this case. But are you suggesting that so long as they copy, as long as you copy what the Supreme Court, one justice on the Supreme Court, says would solve the problem, even if it doesn't solve the problem and there is rampant evidence of voter confusion, that the courts can't look to that and somehow say, well, you know, you didn't have the evidence before you, Mr. Chief Justice, and you sent it back for a trial and evidence on voter confusion, and we can't look to anything beyond the ballot? I think that's correct, Your Honor, because what the court indicated was that it was concerned with widespread confusion among a well-informed electorate. Well, how does the electorate become well-informed? Well, we put the information right on the ballot. We put it in. Remember that in Washington, we're now an entirely vote-by-mail state, so every ballot comes in the mail. When you open the envelope, one of the things you find in there, in addition to the ballot, is a separate insert, a separate sheet of paper, that also explains the party preference and how the top two primary were. Are you familiar with the record in Bush v. Gore in Florida? Do you remember how many voters were confused by the ballot that they got? Are you suggesting, in my hypothetical, that if the evidence came in that a statewide study showed uniformly that a large majority of voters did not understand or appreciate the distinction being drawn by the disclaimer, that that would not call into question the constitutionality of allowing people who are unaffiliated with the Democratic Party, the Republican Party, as the prime examples, that they're helpless? It's too bad because the Supreme Court has decided, as a matter of law, as long as the ballot says it, no matter if it isn't effective, it's good enough. No, Your Honor. I think if that scenario actually occurred and there was evidence of that kind in this case, then I think we might very well say this is not the scenario that the Supreme Court believed it was describing in considering the facial challenge that was before it. But nevertheless, the Court did indicate here that it was confident that there are a variety of ways in which the state could be able to implement the initiative that would eliminate concern. If you follow out what Judge Fischer indicated, would it not be possible, as we see yet once again in the current political posture, where someone from one party can create an entirely new image of somebody in another party, whether or not they're the party's nominee, or like we had in California, the same kind of thing here. Somebody could specifically target someone of another party and say that someone who was theoretically a Republican was a libertarian and have false advertising, repeated false advertising, creating confusion in the mind of the electorate. Would that be enough to raise the constitutionality or defeat this statute? Because there you have a specific example of where public misinformation had created so much confusion that no matter what was said on the ballot, that was, it just didn't work. I don't believe that particular example would give rise to a challenge to this statute because we really need to focus here on what's the specific confusion at issue. It's not whether the First Amendment speech that's going on among and between the candidates out there and running campaigns is creating confusion about the nature of the other candidates. There's a causation question. Is the confusion caused by the state's implementation of the primary system? So basically, for our purposes, you're saying that whatever the answers to the hypotheticals that Judge Fischer and I have given to you, that's all really interesting. Maybe it isn't, but that's out there. But that doesn't really matter here because all we're talking about is what was before the district judge, which was what the ballot did, what the voter pamphlet did, and so on. And so we don't even have to get into those other questions. Is that your point? That is, of course, correct. Well, let me just ask. Chief Justice Roberts didn't speak about just the ballot. He spoke about widespread educational efforts on the part of the state. He spoke about the voter's pamphlet and so forth. So when you said it was only the ballot, wasn't there a good deal more than just the ballot? Exactly. There is. And the state did do all of those things. That's right. This is perhaps an example of shorthand speech on my part, that when I refer to the ballot, I mean to indicate the entire panoply of what the state puts before the voters, which very noticeably does include not only the ballot itself, but the insert that accompanies the ballot, the voter's pamphlet that's mailed to every place of residence in the state. And, of course, when the initiative was first implemented, the very first thing that the Secretary of State did was to arrange for a public advertising, public media campaign that would give an explanation to the voters. Which included advertising on radio and newspapers and TV, as I understand it. Radio and television, that's right. Yes. And should also point out, just in passing here, I do want to reserve time for my co-counsel to understand that in Washington, there is another difference between Washington and many other states, which is we have a very wide open tradition in terms of party identification among voters. Voters in Washington do not indicate a party preference or a party affiliation when they register to vote. That's something that by tradition has been regarded as very private in Washington. And so voters aren't accustomed to thinking in terms of parties in quite the same sense that they might in other systems. I would like to reserve time for my co-counsel if there are no further questions. Thank you. Thank you. Good morning. My name is Tom Ahern. I represent the Washington State Grange. I'd like to briefly respond to three assertions that the Democratic Central Committee's attorney made. But first, I'd like to focus on one point. And that one point concerns the piece of paper that is right in front of every Washington voter when he or she votes. And that piece of paper is the ballot that everyone's been discussing. And with the Court's permission, I have a blowup of a reminder that we've been discussing. And this is all from beside the excerpts of the record on pages 7 of 32 and 8 of 32 of the Grange's brief. And in the 2008 election cycle, every Washington ballot reminded the person voting on that ballot in bold print.  What I did is I've taken the actual reminder from the ballot. I know the text is. I'm going to ask you, is that the relative size? I know it's oversized here, but if we shrink it down each one proportionally, that's the placement and that's the relative size. This appears before the first partisan race on the ballot. And, frankly, in this, and I have the excerpts of record size, the Grange excerpts, 49 and 50, and then the state's excerpts, this is from 235. The Insurance Commission race is further down the ballot. This isn't the first partisan race. I just have an example of what the reminder says and an example of one of the partisan races. Okay, so how many pages are the ballot? It depends on which county you're in. Every county has different elections. Big county. Big county could be a couple pages. Okay, so the disclaimer is on the first page. Somebody skips the first page because they're not interested in that part, and they go to the rest of the ballot. Well, remember, in Washington. Then what's their source of information about preference? The source of information is the ballot that they're voting on, and that ballot tells every citizen. Well, that's what I'm asking you about. That's what I said. You're putting up the exhibit, and the way it's presented, it makes it very dramatically informative. But if those offices are separated from the disclaimer, which is at the top of that, are several pages away, it's several pages away, and all you get down ballot is just the preference. You have to assume the voter starts at the top and works their way down. Exactly, Mike. At the top, the first partisan race, it tells every single voter the tentative partisan office, he or she prefers. The candidate's preference does not apply to the candidate's nomination. I'm not asking you about the content. I'm asking you about placement. Placement. Placement. The very next, it starts with what ballot you're voting on, which is 39 counties in the state of Washington. The very first election after this reminder is when the partisan race starts. And the ballot expressly says partisan office. I'm looking at the actual ballot here. Is it fair to say, or isn't it fair to say that Judge Fischer's point is absolutely correct, that although there is such a statement at the beginning of the first page, the reality is that the insurance commissioner partisan office is on the second page of the ballot, and so it's not a partisan office. And so what you have here is your point is that it's there, but it is not proportional and it doesn't follow in that order, right? And I think what you're doing is you're looking at the appendix. I think it's A or B to the state's brief where they have a King County ballot. B. And you have on the first page, and I think it's like the upper right-hand, or the right-half of the ballot, you've got the reminder. The first election after that is a partisan office where you've got someone's name refers to the Republican Party, someone's name refers to the Democratic Party. I understand that, but Judge Fischer is right, is he not, that if somebody's not interested in the first few issues, say they're themselves in a race or something, you go to the insurance commissioner, they would not necessarily see that before they voted, right, unless they made the point of reading all of the ballot. Unless someone actually reads the ballot they're voting on, they won't understand the ballot that they're voting. That is correct. And that — All right. So what — I think we've exhausted the trial exhibit, which is why they're not very good in the appellate court. So why don't you go to the next issue? Well, my only point is this is what the ballot said in the 2008 election. Well, that's what it said. We haven't disputed, you know, placement and voter confusion of the issue. Well, let's talk about the voter confusion, because what the three political parties want the three of you to do is rule the initiative's top two system unconstitutional, because those voters up in Washington, they're either too stupid or absent-minded or skipping, they actually understand the plain language on their ballot. We have had several election cycles now with this language. Millions, literally millions and millions and millions of voters have voted with this plain language. The political parties do not produce a single actual voter who claims they were confused by this language. They do not produce a single actual voter who claims that they thought — Counsel, please stay up here, because you're being recorded. Oh, I'm sorry. For posterity. We don't need — we don't need the trial exhibit, okay?  There had been such an election at the time of the trial in this case. Or the hearing. This was set to be the trial in January of 2011. There had been a 2008 election, full election cycle. There had been special elections for the 2009 election cycle. The 2010 election cycle had just finished. So, yes, there had been plenty of elections, millions of Washington voters. The political parties did not produce a single voter that claimed that they were confused by that language or that they thought when the ballot told them that preference does not imply nomination, et cetera, they thought it does imply nomination, et cetera. The three assertions that I want to quickly respond to is, first, the Democratic Central Committee's attorney made a reference to affiliation, preference, party registration. They're all synonymous with membership. I want to follow up with Mr. Eban's point that Washington, we don't have party registration. And you recall from the last time this case was around, and I'm thinking of entry 40 on the — which was the Greenwich's response brief, pages, I think, 7 and 8, where we went through these facts, where the membership in Washington, for example, the Democratic Central Committee will consider you a member of the Democratic Party if you say you're a member of the Democratic Party. This idea of membership or registration in Washington is a hollow ghost. It doesn't — there's no there there. Second point, there's no evidence that preference is a personal preference. Well, sorry. It is. It says each candidate's partisan office may state political party that he or she prefers. And then it goes on to state prefers Democratic Party, prefers, et cetera. Compare that to, for example, the PCO election ballots, and in the record they would be, for example, state supplemental excerpts of record 205, 218, or 215, where for PCOs it expressly says, for example, you know, Christopher Ward, Republican Party candidate. When someone's a candidate, the ballot says you're a candidate. Or for United States president or vice president, I'm looking at state supplemental excerpt of record 223. For president or vice president, Barack Obama, Joe Biden, Democratic Party nominee. In Washington, the ballot — Counsel, excuse me for interrupting. Your time was almost up. I take it the state has not appealed the decision of the Supreme Court with respect to candidates seeking election as PCOs or PC Committee officers. Correct. They must be members of a political party even though the voters themselves are not required to be actual members. Why not have separate ballots or just add a box, as the parties have suggested? Well, this report struck down the PCO elections. My understanding of current Washington law is we're not doing PCO elections, which is a first. Okay. Well, you were raising PCOs. Well, all I'm saying is the ballot, this argument that preference really means nominee or candidate, our ballots say when you're the candidate, for example, the Democratic Party for president or vice president, our ballot says that. If you are the nominee, if you're a candidate for a Republican office, like a Republican PCO, our ballot says that. Our ballot says what it means and means what it says. You know, Mike Freidler prefers the Democratic Party. And the ballot reminds voters that the statutes in Washington, the law in Washington, is that that is not the nominee. Okay. I understand your argument. And briefly, with the Democratic Central Committee's argument, and they're referring to Section 121 about that one statute from the old system that says it's the party's nominee or whatever that's listed, that's the same argument the political parties made last go-around with respect to minor party nominations. And Judge Zilley in that was not appealed. Judge Zilley ruled that that the old party nomination system provisions like that no longer are in effect because the COP 2 system completely replaced that system. That's Judge Zilley's ruling, 377 F. Sutton, second at 929. The Supreme Court at 442-807. Okay. You're over time, Brian. Okay. I'm sorry, Your Honor. I will just shut off the rest on the ballot that the voters actually had in front of them. There's no specter of widespread voter confusion in this record. There's not even a single voter shown confused in this record. Thank you. If I could very briefly. Thank you, Judge Nelson. Your question to the State got an admission I've been waiting for for a long time. That disclaimer is ambiguous. He said essentially it says maybe yes, maybe no. It had to universally apply. There might be some nominees on those ballots where the statement would be accurate. There might be some where it wasn't. So they couldn't disavow. They could not write a disclaimer. They chose not to write a disclaimer that said there is no association. They left open the possibility and created the confusion. And then in response to Judge Fischer, he said we could have clarified. We could have indicated whether they were or they weren't, but we chose not to. And that's why this initiative implementation fails. They created confusion. They chose to leave the confusion. And they didn't take a reasonable step to clarify it. Dave, could you respond to the argument that there's been no evidence of an actual, excuse me, election of the kind that's before us today other than the PCS? Yeah, the State's expert. You may want to hear my question. Oh, sorry. I apologize. Why there wasn't any evidence and why that wouldn't be the appropriate vehicle where there is, in fact, evidence of voter confusion that's dispositive in a particular race? In other words, what we have here, we don't have any particular race that's before us. We're trying to look to see whether or not there's enough evidence to say that notwithstanding what the Supreme Court said about the facial validity and the adequacy of the State's possible ways of implementing it, I was giving a long hypothetical to counsel for the State about, well, what if, what if. The what if case seems to me the paradigm case would be to bring a challenge where the Democratic Party, the Republican Party, as a nominee, there's a primary in which the nominee, the official nominee, is swamped out because voters thought either that the winning candidate was, in fact, the Republican nominee because the preference format doesn't allow the actual nominee to distinguish himself or herself from somebody else who prefers to be affiliated. That would be a strong case. I don't know if it would be a winning case, but that would be a clear enough case where there was clearly voter confusion. And if it's within a county, so much the better. I mean, I don't know. Why wouldn't that be the appropriate as-applied case? That would only deal with part of the problem. That would deal with the issue with respect to that particular candidate. But a candidate is a symbol. A candidate is part of our message. As Judge Stevens said and was quoted in Thomas, a party's choice of a candidate is the most effective way in which that party can communicate to the voters what the party represents and thereby attract voters' interest and support. When people across the board are allowed to portray themselves as candidates of our party, they are adulterating our message. They are adulterating our message across the board. And the Supreme Court has said adulterating our message is the heaviest burden you can place on First Amendment right. Dealing with this isolated challenge of a particular candidate who didn't win that particular election because of a particular set of circumstances doesn't deal with the wholesale adulteration of our message that occurs from masqueraders that can come in and use this confusion. My problem is maybe I've referred to the trademark issue. I mean, there's a concept in trademark law, dilution. What you just argued is basically a dilution argument. Those are generally proved by expert testimony on actual voter or, I mean, consumer surveys. So you at least have something concrete to go on. I know Justice Roberts, Chief Justice Roberts said he didn't think such surveys were appropriate. So it's a little bit confusing as to what we're trying to grapple with here in terms of you get a ballot that does what a Supreme Court says, and yet you're arguing that voters are inherently confused. I'll accept that, you know, generally. But, you know, the Supreme Court has clearly set a bar that suggests it's going to take more than just speculation or common sense arguments or things picked out. That's why I was focusing on an actual election where you could add some record where there may have been, in fact, actual confusion that you could then show that the ballot system, disclaimers, and education don't work. And so there is testimony from the State's expert that he is confused. His confusion is evident from his testimony, and that others would be confused because sometimes they would expect to see nominees on the ballot. So you have actual evidence of confusion that has not been rebutted. And the State did not, respectfully, the State did not do what the Supreme Court directed it to do. The State took steps that were similar to what the Supreme Court talked about. But what the Supreme Court said is you need to implement it so as to eliminate the risk. They didn't eliminate the risk. The risk is still there. In fact, they may even have exacerbated it with this ambiguous disclaimer and their refusal to let it be clarified by simply asking the party, is this person a member? So they haven't done what the Supreme Court said. They've done lip service to what the Supreme Court said. Okay. Thank you, counsel. It's a very interesting case. I know it's important. We know it's important to the State and all of you, so we appreciate the argument. Thank you very much. And the case is submitted, and we shall stand in adjournment or reset.
judges: Nelson, Fisher, Smith